## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

PATRICK C. HILMERS, JR.,  
(TDCJ-CID #1043350)  
               Plaintiff,  

vs.  

DR. ABBAS KHOSHDEL, *et al.*,  
               Defendants.

§  
§  
§  
§  
§  
§  
§  
§  
§

CIVIL ACTION NO. H-13-3795

## MEMORANDUM AND OPINION

Patrick C. Hilmers, Jr., an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), sues under 42 U.S.C. § 1983, alleging that prison officials at the Estelle and Wynne Units violated his civil rights by denying him medical care, denying him due process, and failing to protect his safety.  He proceeds *pro se* and *in forma pauperis.*

Seven of the defendants have moved to dismiss on the grounds that Hilmers has failed to state a claim upon which relief can be granted and that they are entitled to qualified immunity. (Docket Entry No. 16, 17).  Hilmers has responded and filed an amended complaint.  (Docket Entry No. 24).

Based on the pleadings, the motions to dismiss, the record, and the applicable law, this court grants the motion to amend, motions to dismiss, considering the amended complaint, and enters final judgment by separate order.  The reasons for these rulings are stated in detail below.

## I.      The Complaint Allegations

Hilmers sues Bobby Vincent, UTMB Medical Director Region I,  Estelle Unit, and twelve defendants at the Wynne Unit: Dr. Abbas Khoshdel, University of Texas Medical Branch (UTMB)

physician; Pamela Williams, UTMB/CMC Correctional Clinical Assistant; Lisa Ford, UTMB/CMC Correctional Clinical Assistant; Keenan Harrison, UTMB/CMC Correctional Clinical Assistant; E.R. Garcia; Vernon K. Pittman, Senior Warden II; Kevin Mayfield, Assistant Warden; Brian D. Smith, Major; Bruce C. Baggett, disciplinary captain; Robert H. Quada, Jr., Librarian II; Anitra Lindley, Region I Practice Manager; and Latarsha Gamble, Correctional Officer III.   In his amended complaint, Hilmers also sues Myra L. Walker, UTMB registered nurse; Amelia Hilterline, correctional officer V; and Laura Richey, unit grievance investigator.  (Docket Entry No. 24-1, pp. 3-4).

The Texas Attorney General's Office advised that Dr. Abbas Khoshdel and Pamela Williams no longer work for the TDCJ and are not represented by the Attorney General's Office.  (Docket Entry No. 18).   The Attorney General's Office further advised that it does not represent Vernon Pittman, Kevin Mayfield, Latarsha Gamble, Robert Quada, Jr., Bruce Baggett, and Brian D. Smith. (Docket Entry No. 13).   Nine defendants have not been served:  Dr. Abbas Khoshdel; Pamela Williams; Vernon K. Pittman; Brian D. Smith; Robert H. Quada, Jr.; Latarsha Gamble; Myra L. Walker; Amelia Hilterline; and Laura Richey.

Hilmers alleges that in 2008, he was diagnosed with ulcerative colitis and Crohn's disease. He has chronic diarrhea, rectal bleeding, and excessive bowel movements. He alleges that in prison, he repeatedly requested extra toilet paper, but Dr. Khoshdel refused on the ground that UTMB policy prevents medical personnel from issuing extra toilet paper as a medical necessity.  Hilmers alleges that he was forced to tear up sheets and use wet t-shirts and newspapers to clean himself.  Despite Dr. Khoshdel's order, on December 30, 2010, Hilmers was able to get a pass for extra toilet paper. The pass was reissued on July 2, 2011.  Hilmers went to Dr. Khoshdel on December 30, 2011 to ask

him to renew the pass.  Hilmers alleges that Dr. Khoshdel became angry and subjected him to an

unnecessary and abusive rectal examination that caused him pain. Hilmers alleges that Dr. Khoshdel

did not use less intrusive means to examine him, such as testing stool samples, listening for bowel

sounds, and palpating the abdomen.  Hilmers alleges that Dr. Khoshdel instead performed a deviant

sexual act by inserting his finger into Hilmers's rectum.  Hilmers alleges that this was the first rectal

examination Dr. Khoshdel had performed on him since April 2008.

After the rectal exam, Hilmers began seeing blood on toilet paper and continued to have pain.

Hilmers filed a sick call request on January 3, 2012 to see if Dr. Khoshdel had torn his rectal wall

or prostate during the rectal exam.  On January 6, 2012, Hilmers met with Harrison and two UTMB

clinical assistants at the Wynne Unit, who tried to locate the sick call request. On January 5, 2011,

Hilmers complained about Dr. Khoshdel's conduct to Dr. Bobby Vincent, the UTMB medical

director. Hilmers alleges that he had notified Dr. Vincent about Dr. Khoshdel's unwritten policy of

refusing passes for extra toilet paper in 2008.   Hilmers argues that if Dr. Vincent had acted on the

earlier complaints, the December 30, 2011 incident would not have occurred.

On January 5, 2012, Hilmers also informed Warden Pittman of Dr. Khoshdel's abusive rectal

exam.  Hilmers alleges that Warden Pittman had a duty to investigate the allegations and did not.

On January 13, 2012, Hilmers submitted a Step Two grievance.  The response was that

Hilmers had received medical care and the examination had been conducted with a chaperone, which

addressed the concerns.  Hilmers admits that his pass for extra toilet paper was renewed.

Hilmers alleges that on February 10 and 17, 2012, defendant Lindley, a Senior I Practice

Manager at the Wynne Unit,  learned about the incident but did not discuss it with him.  Hilmers

alleges that Lindley had been aware of Dr. Khoshdel's unwritten policy of denying extra toilet paper

since 2010, and that Lindley had authorized the extra toilet paper under policy A-08.8, despite Dr. Khoshdel. Hilmers alleges that Lindley knew how Dr. Khoshdel would react when he learned that Hilmers had received a pass for extra toilet paper. Hilmers alleges that Lindley did not depose defendants Harrison, Ford, Williams, and Gamble, as well as Michael Martinez, a fellow inmate who was in the clinic when the rectal exam occurred, to preserve their testimony about the incident.

On January 29, 2012, Hilmers was examined by a physician at the UTMB hospital in Galveston. A colonoscopy scheduled for April 13, 2012, had to be rescheduled for April 21, 2012.

Hilmers asserts that Mayfield, Baggett, Garcia, and Smith have retaliated against him for filing grievances and complaints against Dr. Khoshdel. On April 6, 2012, Hilmers sent the Clerk of the United States District Court a large flat box containing blood and feces on toilet paper to serve as DNA evidence. He alleges that on April 9, 2012, Quada learned that Hilmers had mailed this evidence to the court. On April 17, 2012, Garcia, an employee of the Wynne Unit, summoned Hilmers to his office and questioned him about sending the DNA evidence to a judge. Hilmers responded that he did not send bloody toilet paper to a judge, but instead to the Clerk of Court, to be stored in a forensic evidence room.

Hilmers alleges that on April 17, 2012, a false disciplinary charge was filed against him. The charge was that:

> Hilmers, Patrick Cliff did expose Judge Hoyt of the United States District Court Southern District to toilet tissue containing blood and feces by sending such item by way of legal mail. Furthermore, did send the toilet tissue containing blood and feces to the judge, a felony as defined by laws of the United States in violation of 18 U.S.C. § 1716, injurious article as charged.

Hilmers was also charged with violating BP-3.91 of the Uniform Offender Correspondence Rules and TDCJ offense codes 3.5 and 10.0. Hilmers alleges that Smith filed these false charges to cover up the aggravated assault by Dr. Khoshdel and to prevent Hilmers from sending mail to the court. Hilmers alleges that Assistant Warden Mayfield's refusal to intervene amounted to deliberate indifference.

On April 23, 2012, Baggett conducted a hearing in the disciplinary case. Hilmers alleges that he had a counsel substitute, but that she never identified herself as his counsel substitute. Baggett found Hilmers guilty and punished him with a 45-day cell restriction, 45- day commissary restriction, 15 days in solitary confinement, a reduction in good-time earning class from state-approved Trusty 3 to Line 1, and a loss of 365 days of good-time credit. Hilmers states that he is ineligible for release on mandatory supervision. Hilmers also alleges that after the disciplinary conviction, prison officials placed him in a different unit. Hilmers filed grievances on April 24, and May 11, 2012, without success. He alleges that Senior Warden Mayfield was aware of his grievances but failed to investigate or respond. Hilmers seeks compensatory damages, punitive damages, and nominal damages against the defendants in varying amounts. (Docket Entry No. 24-5, pp. 12-14).

The allegations and motions to dismiss are examined in light of the legal standards that apply.

## II.    The Legal Standards

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to Relief." FED.

R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly,* 550 U.S. 544).

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court clarified that under Rule 8(a)(2), plaintiffs are not required to include "'detailed factual allegations,' but more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' is needed." *Id.* (quoting *Twombly,* 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (quoting *Twombly,* 550 U.S. at 557). The Court emphasized that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556). A complaint that pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557).

A court generally must limit itself to the contents of the pleadings in considering a Rule 12(b)(6) motion, but may consult documents attached to the defendant's motion if "'they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)). A complaint that "shows relief to be barred by an

affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause

of action." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050

(5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983); *accord La Porte Constr. Co. v. Bayshore Nat'l*

*Bank of La Porte,* 805 F.2d 1254, 1255 (5th Cir. 1986).

A plaintiff should have at least one chance to amend a complaint under Rule 15(a) before the

action is dismissed with prejudice for insufficient pleading. *See Great Plains Trust Co. v. Morgan*

*Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford

plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is

clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable

to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents*

*of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and

outright refusal to grant leave to amend without a justification . . . is considered an abuse of

discretion." (internal citation omitted)).  However, a plaintiff should be denied leave to amend if the

court determines that "the proposed change clearly is frivolous or advances a claim or defense that

is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY

KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson,* 247

F. App'x 534, 535 (5th Cir. 2007) (unpublished) (per curiam) ("'[A] district court acts within its

discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend*

*Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir.

1999))).

"A document filed *pro se* is 'to be liberally construed,' . . . and 'a pro se complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers.'" *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pleadings filed by *pro se* litigants are liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2000).

A federal court has the authority to dismiss a complaint in which the plaintiff is proceeding *in forma pauperis* before service if the court determines that it is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

## III.    The Motion to Dismiss

### A.    The Claim That Hilmers Was Denied Medical Care

Hilmers alleges that Dr. Khoshdel repeatedly denied him extra toilet paper and performed an abusive rectal exam on December 30, 2011. He alleges that other prison officials knew of Dr. Khoshdel's refusal to issue extra paper and failed to investigate.

Hilmers alleged virtually identical claims against four of the defendants in this case—Dr. Khoshdel, Anitra Lindley, Vernon Pittman, and Bobby Vincent—in Civil Action No. 4:11-3813, a lawsuit he filed in federal district court on October 26, 2011. The judge in that case summarized Hilmers's claims as follows:

> The crux of Hilmers' complaint is that Dr. Khoshdel, in May, 2008, prescribed medication that aggravated plaintiff's pre-existing medical conditions of ulcerative colitis and Crohn's disease. Plaintiff contends

> that Dr. Khoshdel prescribed medications for Hilmers' hepatitis C,
> fluid around his heart, and bowel conditions, knowing they would
> have severe adverse side effects. He also contends that Dr. Khoshdel
> refused to send him for a second colonoscopy after his symptoms
> worsened, and failed to enter prescriptions into the computer system
> so that Hilmers could obtain the prescribed medications at his unit.
> Hilmers also complains that Dr. Khoshdel refused to authorize
> needed sanitary supplies, such as extra toilet paper and diapers, made
> necessary by Hilmers' medical conditions.

*Hilmers v. Pittman,* Civil Action Number 4:11-3813 (Docket Entry No. 92, p. 2).  The court granted

defendants' motion for summary judgment after considering affidavits submitted by Dr. Vincent, Dr.

Khoshdel, and Anitra Lindley, and describing their treatment of Hilmers for his various medical

conditions, and dismissed the case in June 2013.

Hilmers filed the present lawsuit, Civil Action Number 4:13-3795, six months later, on

December 30, 2013.  He again alleged that he was denied extra toilet paper and was subjected to an

abusive rectal exam.  (Docket Entry No. 24-2, Amended Complaint, pp. 17-26).  Hilmers made the

same allegations in the earlier case, Civil Action Number 4:11-3813.  The summary judgment and

the dismissal in the first case preclude Hilmers from proceeding with this case.  *Arizona v.

California,* 530 U.S. 392, 412–13 (2000).

Preclusion can be either claim preclusion or issue preclusion. *Test Masters Educ. Servs. Inc.

v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005).  Claim preclusion bars relitigation of causes of action

that either have been litigated or should have been litigated in an earlier suit.  Claim preclusion has

four elements: (1) the parties are identical or in privity; (2) the prior judgment was rendered by a

court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits;

and (4) the same claim or cause of action was involved in both actions. *Petro–Hunt, L.L.C. v. United

States,* 365 F.3d 385, 395 (5th Cir. 2004).  All four elements are met in this case.  Hilmers sued four

defendants in 4:11-3813: Dr. Abbas Khoshdel, Anitra Lindley, Vernon Pittman, and Bobby Vincent. Hilmers named those same defendants, as well as twelve others, in the present suit. The prior judgment was issued by a court of competent jurisdiction, and ended in a final judgment on the merits. Both actions involved the same claims for denial of medical care. The events leading up to and following December 30, 2011 are the basis of both actions. Hilmers mailed the toilet paper containing blood and feces in Civil Action Number 4:11-3813, and in this case he filed a copy of the cover letter he sent with that mailing. (Docket Entry No. 24-6, pp. 14-16). The claim that Hilmers was denied medical care is barred by claim preclusion.

Issue preclusion also applies. The elements for issue preclusion are: (1) the issue was involved in the prior action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment. *Petro–Hunt, L.L.C. v. United States,* 365 F.3d 385, 397 (5th Cir. 2004) (footnotes and citation omitted). Issue preclusion may apply even if the claims and the subject matter of the actions differ. *Next Level Commc'ns LP v. DSC Commc'ns Corp.,* 179 F.3d 244, 250 (5th Cir. 1999) (citation omitted). And "'[u]nlike claim preclusion, the doctrine of issue preclusion may not always require complete identity of the parties.'" *Id.* (alteration in original) (quoting *Meza v. Gen. Battery Corp.,* 908 F.2d 1262, 1273 (5th Cir. 1990)).

Hilmers's claim that he was denied medical care satisfies the elements of issue preclusion. Though Hilmers sues added defendants in this case, the issues are identical to the ones he raised in the earlier action. The factual basis of this claim was fully and fairly litigated in the prior action, and the determination that Hilmers was not wrongfully denied medical care was a necessary part of the

judgment in that action. Hilmers's claim that he was unconstitutionally denied medical care is also barred by issue preclusion.

Another ground for dismissing this claim is also present. Hilmers filed this action six months after the court dismissed Civil Action Number 4:11-3813. The claims he raises here are duplicate claims previously dismissed. Duplicative claims filed by an *in forma pauperis* litigant, and complaints seeking to relitigate claims that were unsuccessfully litigated by the plaintiff, may be dismissed. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.), *cert. denied*, 493 U.S. 969 (1989). *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993).

The claim for denial of medical care is dismissed, with prejudice and without leave to amend because amendment would be futile.

**B.     The Retaliation Claim**

Hilmers also alleges that prison officials retaliated against him for filing grievances about the December 30, 2011 incident. Prison officials may not retaliate against an inmate for filing grievances, complaining to a supervisor about a prison employee or official, or for exercising his right to access to the courts. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). To prevail on a retaliation claim, an inmate must establish: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercising that right; (3) a retaliatory or adverse act; and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)(quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995 (1997). Conclusory or subjective allegations are insufficient. *Woods*, 60 F.3d at 1166. "The relevant showing [is] more than the

prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d at 1166 (internal quotation marks omitted).

Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)). *Id.* "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

Hilmers bases his retaliation claim on a series of incidents spread over months after the December 30, 2011 rectal exam.  He alleges that on April 2, 2012, he collected the toilet paper containing blood and feces and mailed it to the United States District Court under a specific case number.  On April 20, 2012, Hilmers was charged with a disciplinary violation for sending Judge Hoyt, the judge presiding over that case, toilet tissue containing blood and feces.  Hilmers believes that Captain Baggett charged him in retaliation for the grievances he filed over the abusive rectal exam.  He also believes that the charge was false and his conviction wrongful because he intended only to have the court preserve the evidence.

The fact that one event follows another in time does not raise an inference of retaliation. *Enlow v. Tishomingo Cnty., Miss.*, 45 F.3d 885, 889 (5th Cir. 1995).  The record undercuts Hilmers's arguments that the disciplinary charge was false and retaliatory.  Hilmers did, in fact, send fecal

material and blood to the court under a specific case number. The judge presiding over that case was Judge Hoyt. Hilmers has not shown that, but for the alleged retaliatory motive, he would not have been charged with a disciplinary case for exposing Judge Hoyt to blood and feces through the mail.

To the extent that Hilmers relies on the decision to transfer him to a different unit to show retaliation, the claim fails. There is no basis to infer that the transfer rose to the level of actionable retaliation. *See Morris v. Powell,* 449 F.3d 682, 684–86 (5th Cir. 2006). Hilmers does not allege or show that he was transferred to an inferior or more dangerous facility than the Wynne Unit. *See Smith v. Hebert,* 533 F. App'x 479, 482 (5th Cir. 2013).

Hilmers has not sufficiently alleged a retaliatory motive by the defendants, and he has not alleged a chronology of events from which retaliation may be plausibly inferred. Hilmers's personal belief and conclusory allegations are insufficient to raise a factual dispute that the defendants acted to retaliate. *See Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir.1999); *Woods,* 60 F.3d at 1166. Hilmers's retaliation claim lacks merit and is dismissed, without leave to amend because amendment would be futile.

### C.    The Due Process Claims

#### 1.    The Claim of an Improper Disciplinary Conviction

"Prison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). When punishment for a prison disciplinary cause does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," there is no "protected liberty interest" that would entitle the inmate to procedural due process rights. *Sandin v. Conner,* 515 U.S. 472, 486 (1995). Prisoners are entitled to certain due process rights under the Fourteenth

Amendment when disciplinary convictions may result in a sanction that affects a protected liberty interest. *Hudson v. Johnson,* 242 F.3d 534, 535-36 (5th Cir. 2001). In Texas sanctions that result in the loss of accrued good-time credits for inmates who are eligible for release on mandatory supervision, or that otherwise directly and adversely affect release on mandatory supervision, implicate protected liberty interests. *Malchi v. Thaler,* 211 F.3d 953, 957-58 (5th Cir. 2000); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997); *Orellana v. Kyle,* 65 F.3d 29, 31-33 (5th Cir. 1995). Hilmers's pleadings state that he is not entitled to release to mandatory supervision. (Docket Entry No. 9, p. 47). The loss of his good-time credits and other punishments for the disciplinary conviction cannot delay his release to mandatory supervision, and no due process claim arises. *See Evans v. Baker,* 442 Fed. App'x 108, 2011 WL 4376219 (5th Cir. 2011) (citing *Arnold v. Cockrell,* 306 F.3d 277, 279 (5th Cir. 2002); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997)).

The record also shows that Hilmers received due process in his disciplinary hearing. Hilmers received notification of the charge on April 20, 2012. (Docket Entry No. 9, p. 42). The disciplinary hearing officer, Captain Baggett, conducted the disciplinary hearing on April 23, 2012. Counsel substitute represented Hilmers at the hearing, which Hilmers refused to attend. Although he alleges that counsel substitute never identified herself as such, the record shows otherwise. Hilmers does not allege why or how he was precluded from attending, presenting evidence or a statement, or calling witnesses.

In reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion." *Smith v. Rabalais,* 659 F.2d 539, 545 (1981)(citing *Thomas v. Estelle,* 603 F.2d 488, 490 (5th Cir. 1979)). "The findings of a prison disciplinary hearing will not be disturbed unless they are arbitrary

and capricious." *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). "[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." *Superintendent v. Hill,* 472 U.S. 445, 455 (1985). There was "some evidence" to support the finding of guilt. Hilmers himself alleges that prison officials had photographs of the plastic baggies containing the toilet paper with blood and feces that Hilmers sent to the United States District Court for the Southern District of Texas in Civil Action Number 4:11-3813.

Other ground also support dismissal. To recover damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A claim for damages that bears a relationship to a conviction or sentence that has not been so invalidated is not cognizable under 42 U.S.C. § 1983. *Id.* If a judgment in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence," then the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* A "conviction" for purposes of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits. *Edwards v. Balisok,* 520 U.S. 641 (1997).

Hilmers does not allege, and the record does not show, that his disciplinary conviction has been invalidated. A favorable judgment on Hilmers's claims would necessarily imply the invalidity

of his disciplinary conviction. Hilmers's due process claim based on illegal disciplinary proceedings is dismissed as legally frivolous, without leave to amend because amendment would be futile. 28 U.S.C. § 1915A(b)(1).

### 2.    The Claim of an Inadequate Grievance System

Hilmers alleges that the defendants violated his civil rights by failing to resolve the complaints presented in his grievances. "A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citation and quotation omitted). An inmate does not have a due process right to seeing grievances resolved to his satisfaction. There is no due process violation when prison officials fail to do so. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.,* slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.,* slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). The defendants' alleged failure to address the grievances to Hilmers's satisfaction did not violate his constitutional rights. The excerpts from the grievance responses Hilmers submitted show that the defendants investigated his grievances and provided timely responses. (Docket Entry No. 24-5, pp. 24, 40; Docket Entry No. 24-6, pp. 3, 6, 18, 30).

Hilmers's due process claims are dismissed, with prejudice and without leave to amend because amendment would be futile.

### D.    The Claim Based on a Failure to Protect

An inmate's claim that his Eighth Amendment rights were violated because prison officials failed to protect him from harm requires a showing of deliberate indifference. *Farmer v. Brennan,*

511 U.S. 825, 847 (1994).  The standard is comparable to "subjective recklessness as used in the criminal law." *Id.* at 839-40.  The inmate must plausibly allege that the officials knew facts from which an inference of risk could be drawn, and that they drew the inference.  Under special circumstances, official knowledge of a substantial risk may be inferred from facts showing the obviousness of that risk. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994).

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care . . . ." *Palmer v. Johnson,* 193 F.3d 346, 351 (5th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)).  The Constitution does not mandate comfortable prisons. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).  *See also Hernandez v. Velasquez,* 522 F.3d 556, 560 (5th Cir. 2008)("[i]t is well settled that 'the Constitution does not mandate comfortable prisons,' and that prison conditions may be 'restrictive and even harsh' without running afoul of the Eighth Amendment," quoting *Rhodes,* 453 U.S. at 347, 349); *Alberti v. Sheriff of Harris Cnty.,* 937 F.2d 984, 998 (5th Cir. 1991), *cert. denied sub nom. Richards v. Lindsay,* 504 U.S. 930 (1992).

An inmate alleging that a prison official has violated the Eighth Amendment must show two elements.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer,* 511 U.S. at 834.  Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id.*  In prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety. *See id.* "To establish deliberate indifference . . ., the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the

prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett,* 157 F.3d 1022, 1025 (5th Cir. 1998).

Hilmers has not sufficiently alleged that the defendants were deliberately indifferent to his health or safety by knowing of, and disregarding, a substantial risk to his health and safety. He alleges that prison officials failed to investigate his complaints about the abusive rectal exam on December 30, 2011. There was no recurrence. He received the extra toilet paper he wanted and medical examinations and care for his condition. The facts Hilmers alleges do not demonstrate that he faced an obvious risk to his personal safety or that the defendants deliberately failed to protect him. Hilmers's failure-to-protect claim is dismissed with prejudice and without leave to amend because amendment would be futile.

### E.       The Claims Against Defendants in Their Individual Capacities

The defendants assert that as a matter of law, they are entitled to qualified immunity because Hilmers failed to allege a constitutional violation and because the pleadings show that their actions were objectively reasonable in light of clearly established law. (Docket Entry No. 16, Defendants' Motion to Dismiss, pp. 8-10; Docket Entry No. 17, Defendants' Motion to Dismiss, pp. 4-8).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established rights known to an objectively reasonable official. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Wilson v. Layne,* 526 U.S. 603, 614 (1999). A state actor is entitled to qualified immunity if his conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his actions. *McClendon v. City of Columbia,* 305 F.3d 314 (5th Cir. 2004).

A court considers whether "the facts alleged show the officer's conduct violated a constitutional right," and whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   A case may be dismissed based on either step in the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).   A district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, Civil Action No. 11–40460, 2012 WL 3517361 (5th Cir., August 16, 2012), citing *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). "[C]onclusory allegations and unsubstantiated assertions" cannot overcome the defense. *Miller v. Graham*, 447 F. App'x 549, 2011 WL 5031467 (5th Cir., October 24, 2011), *citing Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Sylvester v. Cain*, 311 F. App'x 733, 2009 WL 423968 (5th Cir., February 20, 2009), *citing Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 469 n.13 (5th Cir. 1990).

For the reasons explained above, Hilmers's conclusory allegations are insufficient to overcome the defendants' entitlement to qualified immunity for the damages claims against them in their individual capacities.   These claims are dismissed, with prejudice and without leave to amend because amendment would be futile.

**F.     The Claims Based on Respondeat Superior**

To prevail on a § 1983 claim, the plaintiff must prove that the defendant deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).   The plaintiff must show a misuse or abuse of official power and a nexus

between the improper conduct and the defendant's performance of his or her official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). A defendant's "personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). A supervisor cannot be liable for a subordinate's acts based solely on vicarious or *respondeat superior* liability. *See Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987); *see also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (subordinate's acts do not trigger § 1983 liability for supervisory officials). To plead that a supervisor is liable under § 1983, the plaintiff must allege facts showing that: (1) the supervisor failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). A supervisor's deliberate indifference generally requires a plaintiff to allege "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

Hilmers alleges that Vincent, Pittman, and Lindley were responsible for Dr. Khoshdel's abusive rectal exam on December 30, 2011. Hilmers has not alleged that these defendants were personally involved in the examination or that their wrongful conduct was causally connected to the examination. Nor has Hilmers alleged or identified a basis to show that these defendants implemented a policy that was the moving force behind the alleged constitutional deprivation. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Hilmers has shown no basis for individual liability on the part of Vincent, Pittman, and Lindley. His claims against them are dismissed, with prejudice and without leave to amend because amendment would be futile.

## G.     Eleventh Amendment Immunity

The defendants also move to dismiss the damages claims against them in their official

capacities, based on Eleventh Amendment immunity. (Docket Entry No. 17, pp. 8-9). The Eleventh

Amendment protects state officials sued in their official capacities from § 1983 claims for money

damages. *Pennhurst State Sch. & Hos. v. Halderman,* 465 U.S. 89, 101–02 (1984); *accord, Hafer v.*

*Melo,* 112 S. Ct. 358, 363 (1991); *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 146 (5th Cir.

1991).   A damages claim against public officials in their official capacities is in effect a claim

brought against the State itself.   The claim is barred by the Eleventh Amendment and sovereign

immunity. *See Hafer,* 112 S. Ct. at 363; *Oliver v. Scott,* 276 F.3d 736, 742 (5th Cir. 2002) (the Fifth

Circuit has "twice held that the Eleventh Amendment bars recovering § 1983 money damages from

TDCJ officers in their official capacity").

Hilmers's damages claim against the defendants in their official capacities is barred. *See*

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 609

n.10 (2001) ("States and state officers acting in their official capacity are immune from suits for

damages . . ."). The claim is dismissed, with prejudice and without leave to amend because

amendment would be futile.

## H.     The Claims Against the Unserved Defendants

Hilmers also sued Dr. Abbas Khoshdel, Pamela Williams, Vernon K. Pittman, Brian D.

Smith, Robert H. Quada, Jr., Latarsha Gamble, Myra L. Walker, Amelia Hilterline, and Laura

Richey. They have not been served with process.  When a defending party establishes that a plaintiff

has no cause of action, the same claims asserted against a defendant who has not been served may

also be dismissed. *See Lewis v. Lynn,* 236 F.3d 766, 768 (5th Cir. 2001); *citing United States v.*

*Peerless Ins. Co.,* 374 F.2d 942, 945 (4th Cir. 1967). The claims against Khoshdel, Williams, Pittman, Smith, Quada, Gamble, Walker, Hilterline, and Richey stand on the same legal theory as the dismissed claims. They are also dismissed.

### I.      The Pending State Claims

A federal district court has supplemental jurisdiction over state-law claims that are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because the court has dismissed Hilmers's § 1983 claims, the court declines to exercise supplemental jurisdiction over any state-law claims he asserts.

### IV.     Conclusion

The motion to dismiss filed by defendants Mayfield, Baggett, and Garcia, (Docket Entry No. 16), is granted. The motion to dismiss filed by defendants Vincent, Lindley, Harrison, and Ford, (Docket Entry No. 17), is also granted. The motion to amend, (Docket Entry No. 24), is also granted, but does not affect the result. Final judgment is entered by separate order.

SIGNED on September 15, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge